UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN PROTECTION &
ADVOCACY SERVICE, INC.,

        Plaintiff,

v.                                      Case number 06-13273
                                        Honorable Julian Abele Cook, Jr.

WARREN C. EVANS, Wayne
County Sheriff,

        Defendant.

### ORDER

On July 20, 2006, the Plaintiff, Michigan Protection & Advocacy Service ("MPAS"),[1] filed a complaint against the Defendant, Warren C. Evans ("Evans"), in his capacity as the Wayne County Sheriff, seeking to obtain a declaratory judgment, as well as the entry of an injunction, pursuant to the Protection and Advocacy for Mentally Ill Individuals Act ("PAMII"), 42 U.S.C. §§ 10801-10827 and 42 U.S.C. § 1983.

In its complaint, the MPAS contends that Evans has wrongfully refused to permit its staff personnel to acquire access to the mental health and medical records relating to a now deceased minor, Maurice McClain ("McClain"). However, it is Evans' position that the MPAS is barred from securing such records without the consent of the decedent's mother. Both parties have now

---

[1]The MPAS is a non-profit organization that has been designated by the Governor of the State of Michigan to function as the agency with an obligation to enforce the rights of those individuals with disabilities.

filed motions for summary judgment under Fed.R.Civ.P. 56 that are now before this Court.[2]

I.

Maurice McClain ("McClain"), a seventeen year old inmate at the Wayne County Jail, had been serving a one year jail sentence for robbery when he committed suicide. Approximately ten days after his death on April 29, 2006, the Lansing (Michigan) State Journal published a news article which reported the circumstances relating to his death. After reading this news article, the MPAS, through its director, Michelle Mull ("Mull"), concluded that she had garnered a sufficient amount of information, upon which to initiate an investigation in order to determine if McClain's demise was attributable to causes relating to the abuse and neglect of a disabled young man. On the same day that the Lansing State Journal's news article was published, Helen McClain, mother of the deceased minor, was appointed by the Probate Court of Michigan to serve as the personal representative of her son's estate.

On July 7, 2006, the MPAS asked Evans to release the documents relating to McClain's retention as an inmate and his subsequent demise. This request was rejected by Evans.[3] Approximately there weeks later (July 26, 2006), Helen McClain filed a civil rights and wrongful death lawsuit against Evans, Wayne County, and the Wayne County Sheriff's Department in the Wayne County Circuit Court of Michigan.

II.

In order to evaluate the parties' dual requests for the entry of a summary judgment, this

---

[2] Both parties concede that the facts are undisputed in this matter. Thus, this controversy primarily hinges upon the interpretation of the words, "legal representative," and whether the decedent's mother qualifies as "legal representative" under this interpretation.

[3] The MPAS has not requested consent from McClain's mother because it believes that she is not a legal representative for purposes of obtaining consent.

Court has looked to the Supreme Court for guidance. In 1986, the Supreme Court opined that "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). At the same time, the language within Rule 56© provides that a motion for summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Here, the burden is on the Defendant to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court must examine every pleading, deposition, answer to an interrogatory, admission, and affidavit in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56©; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). It is not the role of the Court to weigh the facts. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). Rather, it is the duty of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, the moving party can show that a genuine factual issue is lacking if it presents evidence which is sufficient to make the issue "so one-sided that [they] must prevail as a matter of law," *id.* at 252, or point to a failure by the non-moving party to present evidence "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Upon such a showing, the non-moving party must act affirmatively to avoid the entry of a summary judgment.

Fed. R. Civ. P. 56(e).  A mere scintilla of supporting evidence is insufficient.  *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  Indeed, "[i]f the evidence is merely colorable or is not significantly probative summary judgment may be granted."  *Anderson*, 477 U.S. at 249–50 (citations omitted).

### III.

Following a series of hearings and investigations which substantiated numerous reports of abuse and neglect in various psychiatric facilities throughout the United States, Congress passed the PAMII.  In enacting this statute, it was the declared intention of the Congress to assist the states in establishing a protection and advocacy system which would authorize a designated agency to investigate incidents of abuse and neglect of the mentally ill. 42 U.S.C. § 10805(a)(2)(B).

Although 42 U.S.C. 10805(a)(4)[4] enables designated parties with the authority to gain

---

[4] 42 U.S.C. § 10805(a)(4) reads as follows:

(a) Authority; independent status; access to facilities and records; advisory council; annual report; grievance procedure. A system established in a State under section 103 [42 USCS § 10803] to protect and advocate the rights of individuals with mental illness shall--

(4) in accordance with section 106 [42 USCS § 10806], have access to all records of--
(A) any individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access;
(B) any individual (including an individual who has died or whose whereabouts are unknown)--
(I) who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access;
(ii) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and
(iii) with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect; and
© any individual with a mental illness, who has a legal guardian, conservator, or other legal representative, with respect to whom a complaint has been received by the system or with respect to whom there is probable cause to believe the health or safety of the individual is in serious and immediate jeopardy, whenever--
(I) such representative has been contacted by such system upon receipt of the name and address of such representative;

access to the official records at a given facility under certain limiting circumstances, the parties have strong differences of opinion as to the applicability of this statute to McClain's death. *See* 42 U.S.C. § 10805(a)(4)(B)(ii)[5]  Their disagreement primarily focuses on whether there exists a "guardian, conservator, or other legal representative" who is authorized to give consent to the desired records.

The MPAS contends that Helen McClain is not a legal representative, as defined by 42 C.F.R. § 51.2,[6] and, as such, it does not need to obtain her consent prior to seeking and obtaining documents from Evans pertaining to her son's confinement as an inmate in the Wayne County Jail. In support of its position, the MPAS cites *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center,* 97 F.3d 492 (11th Cir. 1996), wherein the Eleventh Circuit Court of Appeals determined that the issues relating to guardianship, although governed by state law, are terminated upon the death of the incapacitated person. 97 F.3d at 497. Moreover, the *Alabama Disabilities* court, in noting that there was no evidence that either of the parents had been appointed to serve as an administrator, concluded that neither of them were the legal representatives of the estate. *Id.*

---

(ii) such system has offered assistance to such representative to resolve the situation; and
(iii) such representative has failed or refused to act on behalf of the individual...

[5] The parties agree that the language in 42 U.S.C. § 10805(a)(4)(B)(I) and 42 U.S.C. § 10805(a)(4)(B)(ii) have been satisfied.

[6] 42 C.F.R. § 51.2 reads as follows:

Legal Guardian, Conservator, and Legal Representative all mean an individual whose appointment is made and regularly reviewed by a State court or agency empowered under State law to appoint and review such officers, and having authority to consent to health/mental health care or treatment of an individual with mental illness. It does not include persons acting only as a representative payee, persons acting only to handle financial payments, attorneys or persons acting on behalf of an individual with mental illness only in individual legal matters, or officials responsible for the provision of health or mental health services to an individual with mental illness, or their designees.

Relying upon the rationale of *Alabama Disabilities,* the MPAS submits that Helen McClain, notwithstanding her appointment as the personal representative of her son's estate, is not a "legal representative" who is empowered under the law to make the often difficult "health/mental treatment decisions" as required by 42 C.F.R. § 51.2. The MPAS also points to 62 Fed. Reg. 53548-01, 53552[7] as supporting legislation in which the personal representatives of an estate do not fall within the definition of a "legal representative"[8] of a disabled person. Furthermore, it advances the view that a personal representative only represents the estate of the deceased, and does not possess the authority to make the necessary health care and mental health decisions on behalf of the deceased.

Evans disagrees, arguing that 42 U.S.C. § 10805(a)(4)© should serve as the controlling legislation in this dispute. He also challenges the MPAS' interpretation of 42 C.F.R. § 51.2, contending that Helen McClain (1) does possess the legal authority to make health decisions on behalf of her now-deceased son, and (2) was appointed by the Wayne County Probate Court to serve as the personal representative of his estate. In support of this position, Evans cites *State of Connecticut OPA for Persons With Disabilities v. Hartford Bd. Of Ed.,* 355 F. Supp.2d 649 (E.D. Conn. 2005) for the proposition that natural or adoptive parents are considered to be the legal

---

[7] 62 Fed. Reg. 53548-01, 53552 reads as follows:
Other comments were in support of not including: guardians *ad litem* appointed for limited and specific purposes other than health/mental health care and treatment; representative payees; persons appointed during probate proceedings as administrator or executor of the estate; and lawyers representing persons in divorce proceedings, tax hearings or in criminal matters unrelated to mental health status. The Department agrees that all of the above are restricted within the current definition.

[8] The regulations in this statute also provide that the natural or adoptive parents are the legal guardians in the absence of a contrary state statute or directive.

guardians of their children unless the State indicates otherwise. *Id. But see, Office of Protection and Advocacy for Persons With Disabilities v. Armstrong,* 266 F.Supp.2d 303, (E.D. Conn. 2003). Finally, Evans has also relied upon *Advocacy, Inc. v. Brown Schools,* 2001 WL 1910563 (W.D. Texas 2001), in which the court rejected the concept that a parent's right to consent terminates upon the death of the minor child. *Id. at 2.*

IV.

This controversy appears to be a case of first impression within this Circuit. Although there is some guidance from other courts around the country on this issue, it appears as though the resolution of this issue rests solely upon the interpretation by the Court of a "legal representative" under the unique circumstances of this case. Unfortunately, the cases that have been cited by the MPAS are generally inapposite to the issues in this litigation and, thus, are neither instructive nor persuasive. Although the court in *Tarwater* determined that guardianship terminates upon the death of a minor child, it did not address the question that is now before this Court. Similarly, the decision in *Hartford* is equally inapplicable to the present controversy because the minors - unlike the facts here - were still living at the time of the lawsuit. *Armstrong* is equally inapposite because the controverted issues involved adults - not minors.

No further health care or mental health decisions need to be made upon the demise of an individual. However, if the Court accepted this statement as representing an accurate barometer upon which to determine the identity of the person who would be able to make decisions on behalf of a deceased minor, no one would ever qualify as a legal representative because there would never be an opportunity to make important health care decisions after the death of an individual with or without a disability.

It is undisputed that Helen McClain is the decedent's natural mother, who was appointed

by the Probate Court to act as his personal representative, filed a lawsuit in the Wayne County Circuit Court, seeking relief for the alleged civil rights violations by Evans against her son. To conclude that Helen McClain, as the decedent's natural mother and personal representative, is not a legal representative would undermine a parent's ability to make important decisions on behalf of a minor child. There is no justifiable reason to change the outcome in this case because the minor child is no longer alive.[9]

Accordingly, the Court concludes that Helen McClain is a legal representative for purposes of 42 U.S.C. § 10805(a)(4)(B)(ii) from whom consent must be obtained as a condition precedent to seeking and obtaining any official records from Evans regarding the detention of Maurice McClain.

V.

For the reasons stated above, (1) Evans' motion for summary judgment must be, and is, granted and (2) the MPAS's application for a similar form of dispositive relief must be, and is, denied.

IT IS SO ORDERED.

Dated:  April 11, 2007  
       Detroit, Michigan

s/ Julian Abele Cook, Jr.  
JULIAN ABELE COOK, JR.  
United States District Court Judge

---

[9] The MPAS has not provided the Court with any reasonable explanation for its failure to contact Helen McClain in an effort to address those issues of mutual concern other than its desire not to set a precedent for future cases.

Certificate of Service

     I hereby certify that on April 11, 2007,  I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                                    s/ Kay Alford
                                                  Courtroom Deputy Clerk